651 So.2d 806 (1995)
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Appellant,
v.
Joe BENNETT and Dorothy Bennett, etc. et al., Appellees.
No. 94-364.
District Court of Appeal of Florida, Fifth District.
March 10, 1995.
*807 Larry J. Townsend, of Maguire, Voorhis & Wells, P.A., Orlando, for appellant.
Kimberly Sands, of Sands, White & Sands, P.A., Daytona Beach, for appellees, Joe and Dorothy H. Bennett.
F. Bradley Hassell, of Eubank, Hassell & Lewis, Daytona Beach, for appellee, Scotty's, Inc.
HARRIS, Chief Judge.
The issues in this non-final appeal concern the proper interpretation of the definition of an "insured" as that term is used in the subject policy and whether, as a matter of law, coverage is applicable to Scotty's in this case. We find no coverage and reverse.
Joe Bennett visited the Scotty's store in Deland with the intention of buying a garden shed. While at the store, he approached a demonstration model (the model was not for sale by Scotty's in the normal course of its business) of a storage building so that he could see if his tractor would fit in the shed. He opened the shed to examine the inside and as he did so, the model tipped over and struck him. Joe and Dorothy Bennett sued Scotty's, alleging that the manner in which Scotty's displayed the model created an unreasonable risk of harm that was either created or maintained by Scotty's.
Scotty's had purchased a number of storage building kits from a manufacturer, Marco Wood Products, Inc., for resale to Scotty's customers. In addition to these storage building kits, Scotty's also purchased from Marco cut-down display models of the storage buildings. These models were full-size replicas of the facade of the actual storage building. They measured ten feet wide by eight feet high but were only two feet deep. These display models were not intended to be sold by Scotty's to its customers; they were intended merely to aid in selling the storage building kits which Scotty's also purchased.
At the time of the incident in question, Marco was insured under a policy issued by Hartford. Scotty's was an additional insured under this policy but only for specified risks pursuant to the terms of a vendor's endorsement which identified "an insured" as follows:
WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization (referred to below as vendor) shown in the Schedule, but only with respect to "bodily injury" or "property damage" arising out of "your products" shown in the Schedule which are distributed or sold in the regular course of the vendor's business... .
Scotty's filed a third-party complaint against Hartford Accident and Indemnity Company in which it sought a declaration that Hartford was obligated both to defend and indemnify Scotty's against the claims asserted by the Bennetts. Hartford answered and asserted affirmative defenses, one of which was:
18. SCOTTY'S, INC. was not an insured under the policy with regard to models of a portable storage facility as said models were not distributed or sold in the regular course of SCOTTY'S, INC.'s business.
Hartford then filed a motion for summary judgment in which it sought a declaration that it had no duty to defend and no obligation to indemnify Scotty's. Scotty's also filed a motion for summary judgment in which it asked the court to declare that Hartford had a duty both to defend and indemnify Scotty's. The court entered summary judgment for Scotty's, declaring that Scotty's was "an insured" under the vendor's endorsement in the Hartford/Marco policy and that Hartford was obligated both to defend and indemnify Scotty's against the Bennetts' claims. Hartford timely appealed.
We agree that Scotty's is not "an insured" under the vendor endorsement portion of the Hartford/Marco policy, and therefore Hartford has no obligation to defend or indemnify Scotty's in the Bennett action. The policy affords coverage only for injury resulting from Marco products that are either distributed or sold in the regular course of the vendor's (Scotty's) business. Had this injury resulted from a full-size storage building purchased by Scotty's for resale to the public, then coverage would be present. However, because it was the display model which caused the injury, and because Scotty's neither *808 distributes nor sells these display models, Scotty's is not "an insured" and coverage is not applicable.
We do not find persuasive Scotty's argument that since it "distributed" the models within its chain of stores, it therefore met the "distributed ... in the regular course of the vendors business" condition of the policy. As Hartford correctly argues, this interpretation completely ignores the context within which the word "distribute" is used and the intended purpose of a vendor's endorsement. As one court explained:
The question here presented requires analysis of the intended purpose of a vendor's endorsement, viewing realistically its nature and its place not only in the commercial marketplace but within the world of insurance from which it springs. Although the question here involved is one of intended coverage, in such analysis the law of strict liability in tort as it affects the product chain from manufacturer to distributor to retailer and eventually to ultimate customer cannot be ignored because it illustrates the underlying reasons for the existence of the vendor's endorsement.
When a manufacturer produces a product which contains a defect in design or one caused by faulty workmanship and it is sold to a distributor who in turn sells it to a retailer, the latter two links in the chain to the ultimate consumer ordinarily are merely conduits in the stream of commerce which ends at the ultimate consumer.
American White Cross Laboratories, Inc. v. Continental Insurance Company, 202 N.J. Super. 372, 495 A.2d 152, 155-56 (1985) (emphasis added).
A vendor's endorsement is designed to protect the distributors (wholesalers) and the retailers to which the manufacturer sells its products. The word "distribute" as it is used in the vendor's endorsement of the Marco/Hartford policy clearly refers to those distributors (wholesalers) to which Marco sells its products intended for the consumer market.[1] To interpret that term as also referring to a retailer who purchases models not intended for sale to the public but who "distributes" them to its various stores creates an entirely new area of coverage not intended by the policy terms. Rather, the plain meaning of the policy, when considered in the vendor endorsement context, is that coverage applies to all Marco products intended for resale and "distributed" by wholesalers or sold by retailers.
In the instant case, Scotty's is a retailer, not a distributor as that term is used in the vendor's endorsement. As such, Scotty's enjoys coverage under the vendor's endorsement for harm caused by Marco products which it sells in the normal course of its business. Because Scotty's does not sell display models such as the one that fell on Bennett, it is not entitled to coverage under the Marco/Hartford policy for this incident.
REVERSED for further action consistent with this opinion.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] "Distributor" is defined as "any individual partnership, corporation, association, or other legal relationship which stands between the manufacturer and the retail seller in purchases, consignments, or contracts for sale of consumer goods. A wholesaler." Black's Law Dictionary, 427 (5th ed. 1979).